UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LARRY MALLARD,

                              Plaintiff,

                                                      9:21-CV-1080
v.                                                    (LEK/TWD)

STEVEN M. REDNER, et al.,

                              Defendants.


_____

APPEARANCES:                          OF COUNSEL:

LARRY MALLARD
Plaintiff *pro se*
13-B-2942
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

HON. LETITIA JAMES                    Rachael Ouimet, Esq.
New York State Attorney General - Albany    Assistant Attorney General
The Capitol
Albany, NY 12224
Attorney for Defendants

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

This matter was referred for a Report and Recommendation by the Honorable Lawrence

E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R.

72.3(c).  *Pro se* Plaintiff Larry Mallard ("plaintiff" or "Mallard"), an inmate in the custody of the

New York State Department of Corrections and Community Supervision ("DOCCS"),

commenced this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional

rights at Mid-State Correctional Facility ("Mid-State C.F.").  (Dkt. No. 1.)

## I.    THE COMPLAINT AND PROCEEDINGS TO DATE

In October 2021, plaintiff filed a complaint with an application to proceed in forma

pauperis ("IFP").  (Dkt. Nos. 1 and 9.)

By Decision and Order entered on January 3, 2022 (the "January Order"), the Honorable

Lawrence E. Kahn granted plaintiff's IFP application and summarized the relevant facts, as

alleged in the complaint, as follows:

> On or about May 16, 2021, Plaintiff was assaulted by Defendant
> Mid-State C.F. Officer Redner and Defendant Mid-State C.F. Sergeant
> Short. Compl. at 4–5; Suppl. Compl. at 3. Plaintiff specifically alleges
> that he "was suffercated [sic]" and that his "life was threaten [sic]."
> Compl. at 4.  During the assault, Defendant Short directed racial slurs at
> Plaintiff. *Id*. at 4–5. Defendant Mid-State C.F. Correctional Officer
> Walker, who was assigned as Plaintiff's escort officer, "heard [Plaintiff]
> screaming [during the assault but] he did[ not] take action" to stop it. *Id*.
> Following the attack, Plaintiff was treated in "the hospital." *Id.*
>
> At some point after Plaintiff was assaulted, Defendant Mid-State C.F.
> Correctional Officer Annarino held a disciplinary hearing in connection
> with unspecified prison violations.  Compl. at 4–5.  Plaintiff was not
> provided with assistance in connection with the hearing. *Id*. at 5.
> Defendant Annarino presumably found Plaintiff guilty of one or more
> violations and sanctioned him to 360 days in the special housing unit
> ("SHU"). *Id*. at 4–5; Suppl. Compl. at 3. Although it is not entirely clear
> from Plaintiff's pleadings, it appears that Defendant Annarino's
> disciplinary hearing decision was reversed on appeal on or about
> November 10, 2021. Compl. at 5; Suppl. Compl. at 2.

(Dkt. No. 20 at 3-4.)

After a review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28

U.S.C. § 1915A(b), the Court directed a response to the following claims: (1) Eighth Amendment

excessive force claims against defendants Redner and Short; (2) Eighth Amendment failure-to-intervene claim against defendant Walker; (3) Fourteenth Amendment equal protection claim against defendant Short; and (4) Fourteenth Amendment procedural due process claim against defendant Annarino. (Dkt. No. 20 at 7.)

On May 27, 2022, defendants Redner, Short, and Walker filed an answer to the complaint. (Dkt. No. 45.) On May 27, 2022, in lieu of an answer, Annarino moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint as against her. (Dkt. No. 44.) Plaintiff opposed the motion to dismiss and filed a cross-motion to amend the complaint. (Dkt. No. 51.) Defendants oppose the cross-motion to amend. (Dkt. No. 59.)

Because certain aspects of plaintiff's cross-motion are relevant to the Court's analysis of defendant's motion to dismiss, the Court will first address plaintiff's cross-motion to amend.

## II.    MOTION TO AMEND

### A.  Governing Legal Standard

The Federal Rules of Civil Procedure provide that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc*., 659 F. 3d 208, 212-13 (2d Cir. 2011) (citation omitted). Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr*., 214 F.3d 275, 283 (2d Cir. 2000); *see also Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting *Monahan*, 214 F.3d at 283). An amendment is futile if the proposed claim could not survive a motion to

3

dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Lucente v. Int'l Bus. Machines Corp.,* 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

If the amendment seeks to add a party, Rule 21 of the Federal Rules of Civil Procedure, which allows addition of a party "at any time, on just terms," also applies. Fed. R. Civ. P. 21. However, the "showing necessary under Rule 21 is the same as that required under Rule 15(a)." *Johnson v. Bryson*, 851 F.Supp.2d 688, 703 (S.D.N.Y. 2012). The decision to grant or deny a motion to amend is committed to the sound discretion of the trial court and the court's decision is not subject to review on appeal except for abuse of discretion. *Nettis v. Levitt*, 241 F.3d 186, 192 (2d Cir. 2001).

## B.  Summary of Proposed Amended Complaint[1]

In support of the motion, plaintiff submitted a proposed amended complaint with twenty-four pages of exhibits. (Dkt. No. 51-1) ("Prop. Am. Compl.") With the proposed amended complaint, plaintiff adds the following new defendants: (1) Disciplinary Hearing Officer Barbosa ("Barbosa"); and (2) Disciplinary Hearing Officer Martin ("Martin"). *Id.* at p.3. The proposed pleading includes new facts and new causes of action against Annarino, Barbosa, and Martin.[2]

---

[1]  The proposed amended complaint includes exhibits. (Dkt. No. 51-1 at pp. 9-40.) The Court considers the exhibits included with the proposed amended complaint to the extent they are relevant to the incidents at issue. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (a complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference").

[2]  The proposed amended complaint does not include an equal protection claim against Short or any other defendant.

On May 16, 2021, at approximately 12:50 p.m., Walker drove plaintiff to the S-Block visiting area. (Prop. Am. Compl. at ¶¶ 1-4; p. 13.) At the time, plaintiff was shackled and "handwaist cuff[ed]." *Id*. at p. 9. When the van arrived, Redner approached the side of the van and, as plaintiff attempted to exit, Redner "got up under [p]laintiff's arm, and without provocation, [. . .] proceeded to pick up [p]laintiff and slam him face first onto a concrete floor." *Id*. at ¶ 6. Redner repeatedly punched plaintiff in the neck and head while "moving wildly over the top of [p]laintiff." *Id*. at ¶ 7. Redner placed his elbow on the plaintiff's neck causing plaintiff to have difficulty breathing and scraping his face against the concrete floor. (Prop. Am. Compl. at ¶ 8.) During the incident, Annarino was on the right side of the visiting room building "watching that no one came upon the incident." *Id*. at ¶ 11. At some point, Short arrived and began kicking plaintiff in the ribs. (Dkt. No. 51-1 at ¶ 10.) Short placed his hand over plaintiff's mouth and told him to "shut up [. . .] [t]here's no cameras over here" and yelled racial slurs. *Id.*.

After the incident, Walker and Short drove plaintiff to the facility clinic. (Dkt. No. 51-1 at ¶¶ 11-12.) Plaintiff reported the assault to Nurse Kehoe, who prepared an Inmate Injury Report. *Id.* at p. 9.

As part of an investigation into the use of force, Redner and Annarino prepared reports and memoranda claiming that they approached the van in the rear entrance of the visiting area and when Redner opened the door, plaintiff attempted to kick him. (Dkt. No. 51-1 at pp. 14-22.) Redner used his body weight to pull plaintiff to the ground and, as Annarino attempted to restrain plaintiff's legs, he kicked Annarino in her left knee. *Id*.

Annarino filed a misbehavior report charging plaintiff with violating rules related to assault, disorderly conduct, violent conduct, and refusing a direct order. (Dkt. No. 51-1 at 16, p. 24.)

On May 27, 2021, defendant Barbosa presided over a Tier III disciplinary hearing. (Dkt. No. 51-1 at ¶ 17, p. 26.) Barbosa was not fair, refused his requests to call witnesses (including Nurse Kehoe), "coached" witnesses through their testimony, refused his requests for documentary evidence, and improperly excluded plaintiff from the hearing. *Id.* at p. 35. Plaintiff appealed and the Director of Special Housing reversed Barbosa's decision and ordered a new hearing. *Id*. at ¶¶ 18-19, p. 26. Barbosa found plaintiff guilty of the charges in the misbehavior report and sentenced him to 365 days in the Special Housing Unit ("SHU"), with a corresponding loss of privileges. *Id*.

On September 16, 2021, defendant Martin presided over the rehearing on September 16, 2021 at Upstate Correctional Facility. (Dkt. No. 51-1 at ¶ 21.) Martin refused to allow plaintiff to present evidence, to call Nurse Kehoe as a witness, and did not electronically record the hearing. *Id*. at ¶ 22, p. 29-30. Martin found plaintiff guilty of the charges in the misbehavior report and sentenced him to 180 days in the SHU. *Id.* at p. 29.

On November 10, 2021, the Director Special Housing reversed the determination and expunged the misbehavior report. (Dkt. No. 51-1 at 23, p. 33.)

Construed liberally, the proposed pleading includes the following: (1) Eighth Amendment excessive force claims against Short and Redner; (2) Eighth Amendment failure-to-intervene claims against Walker and Annarino; and (3) Fourteenth Amendment due process claims against Annarino, Barbosa, and Martin. (Dkt. No. 51-1 at p. 8.)

6

## C.  Analysis

Defendants oppose plaintiff's cross-motion to amend and argue that (1) the proposed amended complaint does not comply with Fed. R. Civ. P. 15(a) and Local Rule 15.1(a); and (2) the proposed amendments would be futile.[3]  (Dkt. No. 59.)

The Court has thoroughly reviewed the proposed pleading and finds that the claims asserted are sufficiently related to the original claims, defendants, and complaint.  It does not appear to this Court that plaintiff has delayed unduly in bringing his motion, the requested amendments do not significantly change the theory of the case, and the Court is not persuaded that resolution of this matter will be significantly delayed by the filing of the amended pleading. While defendants correctly note that plaintiff has not provided a Notice of Motion, Memorandum of Law, and has not identified the amendments in the proposed pleading, "either through the submission of a redline/strikeout version of the pleading sought to be amended or through other equivalent means," *see* N.D.N.Y.L.R. 15.1(a), in the interest of judicial economy and with special solicitude afforded to plaintiff, the court will review the proposed amended complaint for futility.

### 1.  Eighth Amendment Claims Against Short, Redner, and Walker

As a result of the January Order, Short and Redner were directed to respond to plaintiff's Eighth Amendment excessive force claims and Walker was directed to respond to the Eighth Amendment failure-to-intervene claim.  These claims are repeated and realleged in the proposed

---

[3]  Defendants' argument regarding timeliness and Rule 15(a)(1), *see* Dkt. No. 59 at 7, is misplaced as the court has construed plaintiff's submission as a cross-motion for leave to amend the complaint pursuant to Rule 15(a)(2).

amended complaint.  (Prop. Am. Compl. at p. 8.)  Accordingly, plaintiff's motion to amend, in this regard, is granted.

### 2.  Eighth Amendment Claim Against Annarino

Plaintiff asserts an Eighth Amendment failure-to-intervene claim against Annarino. (Prop. Am. Compl. at p. 8.)

A prison official who is present while an assault upon an inmate occurs may bear responsibility for any resulting constitutional deprivation, even if he did not directly participate. *See, e.g., Tafari v. McCarthy*, 714 F. Supp. 2d 317, 342 (N.D.N.Y. 2010); *Cicio v. Graham*, No. 9:08-CV-534 (NAM/DEP), 2010 WL 980272, at *13 (N.D.N.Y. Mar. 15, 2010.)  To establish liability under a failure-to-intervene theory, a plaintiff must prove the use of excessive force by some other individual, and that the defendant under consideration: (1) possessed actual knowledge of the use by another of excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force.  *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

At this juncture, plaintiff has sufficiently plead an Eighth Amendment claim against Annarino.  Accordingly, this aspect of plaintiff's motion to amend is granted.

### 3.  Due Process Claim Against Annarino

Construing the proposed pleading liberally, plaintiff alleges that Annarino violated his due process rights by filing a false misbehavior report.  *See* Prop. Am. Compl. at ¶ 16.

"[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."  *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir.1997) (citation

omitted).  Moreover, the filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing.  *See Freeman v. Rideout*, 808 F.2d 949, 950, 953 (2d Cir. 1986) ("[T]he filing of unfounded charges is not per se a constitutional violation under section 1983[.]"); *see also Fulmore v. Raimo*, 10-CV-1096 (GTS/DRH), 2012 WL 4033731, at *4 (N.D.N.Y. Sept. 12, 2012) ("[J]ust as an inmate possesses no due process right to be free from being issued a false misbehavior report, an inmate possesses no due process right to be free from having that false misbehavior report relied on by a hearing officer at a disciplinary hearing.").  Rather, "[t]he issuance of false misbehavior reports and provision of false testimony against an inmate . . . violates due process only where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him, . . . or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights[.]" *Mitchell v. Senkowski*, 158 Fed. App'x 346, 349 (2d Cir. 2005) (internal citations omitted).

Annarino did not preside over the disciplinary hearings and plaintiff does not allege that the misbehavior report was issued in retaliation for his exercise of a constitutionally protected right.  Moreover, plaintiff asserts he was cleared of wrongdoing at the hearings on the subject misbehavior report.  Accordingly, the Court finds that plaintiff has failed to state a claim for violation of his due process rights against Annarino.  Thus, plaintiff's motion to amend to assert a due process claim against Annarino, based upon the misbehavior report, is denied as futile.

### 4.  Due Process Claims Against Barbosa and Martin

Plaintiff claims Barbosa and Martin violated his Fourteenth Amendment due process rights during the disciplinary hearings.  *See* Prop. Am. Compl. at p. 8.

To state a procedural due process claim, a plaintiff must allege that he (1) possessed a liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000). An inmate retains a protected liberty interest in remaining free from segregated confinement if the prisoner can satisfy the standard set forth in *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Therefore, a plaintiff must show that (1) the state actually created a protected liberty interest in being free from segregation, and (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 783-84; *Tellier*, 280 F.3d at 79-80.

As to the first factor, "[t]he prevailing view in this Circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor." *Liao v. Malik*, No. 9:13-CV-1497 (GTS/DEP), 2016 WL 1128245, at *4 (N.D.N.Y. Feb. 26, 2016) (collecting cases). As to the second factor, the plaintiff bears the "burden of proving that the conditions of his confinement constituted an atypical, significant hardship in relation to the ordinary incidents of prison life in order to recover damages" under § 1983. *Vasquez v. Coughlin*, 2 F. Supp. 2d 255, 260 (N.D.N.Y. 1998).

The Second Circuit has instructed that in determining whether an inmate's SHU confinement has imposed an atypical and significant hardship, a court must consider, among other things, both the duration and conditions of confinement. *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013). Thus, while not dispositive, the duration of a disciplinary confinement is a

significant factor in determining atypicality. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citations omitted).

The Second Circuit has declined to provide a bright-line rule as to what duration of punitive confinement implicates a prisoner's constitutional rights; however, general guidelines have been defined. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). Confinement for 101 days or fewer under typical punitive segregation conditions "generally do[es] not constitute 'atypical' conditions of confinement." *Bunting v. Nagy*, 452 F.Supp.2d 447, 456 (S.D.N.Y. 2006) (quoting *Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) ). By contrast, 305 days or more of segregated confinement has been deemed an atypical and significant hardship. *See Colon*, 215 F.3d at 231-32. "A period of confinement between 101 and 305 days is considered to be an 'intermediate duration' and could implicate a liberty interest should a detailed record of the conditions of confinement indicate that it was an atypical and significant hardship." *Bunting*, 452 F. Supp. 2d at 456 (citing *Sealey*, 197 F.3d at 589); *see also Palmer v. Richards*, 364 F.3d 60, 64-65 (2d Cir. 2004).

The Second Circuit has suggested that "separate SHU sentences 'should be aggregated for purposes of the *Sandin* inquiry' when they constitute a sustained period of confinement." *Giano v. Selsky*, 238 F.3d 223, 226 (2d Cir. 2001) (quoting *Sims v. Artuz*, 230 F.3d 14, 22-23 (2d Cir. 2000)); *see also Sealey*, 197 F.3d at 589 (requiring district court to aggregate sanctions that caused inmate to serve consecutive time in segregation); *see also Reynoso v. Selsky*, 292 Fed. App'x 120, 122 (2d Cir. 2008) ("Overlapping disciplinary penalties may, under some circumstances, have to be aggregated for purposes of determining whether a liberty interest was violated.").

11

In the context of a prison disciplinary hearing, inmates possess due process rights under the Fourteenth Amendment, but "the full panoply of rights" owed to a defendant in a criminal proceeding does not apply. *Applewhite v. Sheahan*, No. 08-CV-6045, 2013 WL 144957, at *10 (W.D.N.Y. Jan. 11, 2013) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). The Supreme Court enumerated certain procedural safeguards that must be afforded to an inmate during the course of a prison disciplinary proceeding in order to ensure that the minimum requirements of procedural due process are satisfied. *Wolff,* 418 U.S. at 539. Specifically, with respect to a disciplinary hearing, the Fourteenth Amendment requires that (1) the inmate receive at least twenty-four hours written notice of the disciplinary charges against him; (2) the inmate be permitted to call witnesses and present evidence "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals;" (3) the inmate be judged by a fair and impartial hearing officer; (4) the disciplinary conviction be supported by some evidence; and (5) the inmate be provided with a written statement of fact findings that support the disposition as well as the reasons for the disciplinary action taken. *Id.* at 563-66.

In the proposed amended complaint, plaintiff claims he was sentenced to the SHU for 365 days on July 31, 2021. (Dkt. No. 51-1 at p. 26.) On September 16, 2021, after a re-hearing, plaintiff was sentenced to the SHU for 180 days. *Id.* at pp. 29, 33. On November 10, 2021, plaintiff's sentence was reversed. *Id.* at p. 33. Therefore, construing the facts in a light most favorable to plaintiff, plaintiff was confined to the SHU from July 31, 2021 until November 10, 2021, which is approximately 102 days. Because this length of confinement is an "intermediate" duration, "the fact-finding required by the Second Circuit to determine whether this [ ] sentence constitutes an atypical and significant hardship cannot occur on a motion to dismiss." *Koehl v.*

*Bernstein,* No. 10 CIV. 3808, 2011 WL 2436817, at *7 (S.D.N.Y. June 17, 2011), *report and recommendation adopted*, 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011).  With respect to the hearings, plaintiff claims that Barbosa and Martin were not fair or impartial,  refused to call witnesses, "coached" officers through their testimony, and refused plaintiff's requests for video/audio footage of the incident, medical records, incident reports, and log books.  (Prop. Am. Comp. at ¶¶ 18-19, 22, pp. 30, 35.)  Plaintiff also claims that Barbosa improperly removed plaintiff from the hearing because he objected to testimony.  *Id.* at p. 35.  At this juncture,  the amended pleading states viable due process claims against Barbosa and Martin.  *See Clark v. Gardner,* 256 F. Supp. 3d 154, 170–71 (N.D.N.Y. 2017) (upon initial review, the plaintiff's due process claim based upon his requests for an employee assistant, the opportunity to call witnesses and present documentary and video evidence, and the hearing officers' bias, were sufficient to require a response).  Accordingly, plaintiff's motion to amend the complaint to include due process claims against Barbosa and Martin is granted.

## III.   MOTION TO DISMISS

An amended complaint supercedes a prior complaint and "renders [the original complaint" of "no legal effect." *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977), *cert. denied sub nom., Vesco & Co., Inc. v. International Controls Corp*., 434 U.S. 1014 (1978).  "Typically, the filing of an amended complaint following the filing of a motion to dismiss the initial complaint moots the motion to dismiss." *Brown v. Napoli*, No. 07–CV–838, 2008 WL 4507590, at *2 (W.D.N.Y. Sep.29, 2008) (citation omitted).  Because plaintiff's motion to amend has been granted, in part, and the amended complaint has been accepted as the

operative pleading, the Court recommends that defendant Annarino's motion to dismiss (Dkt. No. 44) be denied as moot.

IV.    **CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's motion to amend is **GRANTED in part and DENIED in part** as follows: (1) plaintiff's request to amend to include Eighth Amendment claims against Redner, Short, and Walker is **GRANTED**; (2) plaintiff's request to amend to include an Eighth Amendment claim against Annarino is **GRANTED**; (3) plaintiff's request to amend to include a due process claim against Annarino is **DENIED**; and (4) plaintiff's request to amend to include due process claims against Barbosa and Martin is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court revise the docket sheet to include Barbosa and Martin as defendants in this action; and it is further

**ORDERED** that the proposed amended complaint (Dkt. No. 55-1) and all exhibits annexed thereto shall be filed by the Clerk as the amended complaint. The amended complaint will supersede and replace the previously filed complaint and will be the operative pleading; and it is further

**ORDERED** that, upon receipt from plaintiff of the documents for service, the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon the newly added defendants. The Clerk shall forward a copy of the summonses and amended complaint to the Office of the Albany County Attorney and Office of the Attorney General, together with a copies of this Decision and Order; and it is further

14

**ORDERED** that a response to the amended complaint be filed by the defendants, or his/her counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of the action**; and it is further

**RECOMMENDED** that defendant's motion to dismiss (Dkt. No. 44) be **DENIED as moot**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

15

DATED:  October 28, 2022

Syracuse, New York

**Thérèse Wiley Dancks**
**U.S. Magistrate Judge**

16