UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LARRY MALLARD, JR.,
              Plaintiff,

   -against-

STEVEN REDNER, Correction Officer, Mid-State Correctional Facility, New York State Department of Corrections and Community Supervision; MOLLY ANNARINO, Correction Officer, Mid-State Correctional Facility, New York State Department of Corrections and Community Supervision; JUSTIN WALKER, Correction Officer, Mid-State Correctional Facility, New York State Department of Corrections and Community Supervision; LUCAS SHORT, Correction Sergeant, Mid-State Correctional Facility, New York State Department of Corrections and Community Supervision; ROBERTO BARBOSA, Commissioner's Hearing Officer, New York State Department of Corrections and Community Supervision; S. MARTIN, Commissioner's Hearing Officer, New York State Department of Corr Corrections and Community Supervision; sued each in their individual capacity,
              Defendants.

---

SECOND AMENDED CIVIL RIGHTS COMPLAINT

9:21-CV-1080(TWD/LEK)

Jury Trial Demanded.

## INTRODUCTION

1.  This is a civil action seeking damages against several state prison employees for committing acts, under the color of state law, which deprived the above-captioned plaintiff of his rights under the Constitution and laws of the United States of America, for conspiracy to impede and hinder the due process of justice, with intent to deny plaintiff's equal protection of the laws; and for refusing or grossly neglecting to prevent such deprivations and denials to plaintiff so named.

## JURISDICTION & VENUE

2.  The Court has jurisdiction of this action under 28 U.S.C. Section 1331 and 28 U.S.C. Section 1334. The matters in controversy arise under 42 U.S.C. Section 1983 and pursuant to @8 U.S.C. Section 1391, the United States District Court of the Northern District of New York is an appropriate place of venue because it was where the events giving rise to these claims occurred.

## PARTIES

### A. Plaintiff

3.  Plaintiff Larry Mallard, Jr. ("Plaintiff"), was, at all times mentioned herein, over 18 years of age, a citizen of the United States of America, and a resident of the State of New York.

4. Plaintiff currently is under the custody and care of the New York State Department of Corrections and Community Supervision ("DOCCS").

5. At all times relevant to this complaint plaintiff was confined to a corerctional facility under the direction and control of DOCCS.

B. Defendants

6. Defendants Correction Officer Steven Redner ("defenadnt Redner") was, at all times mentioned herein, over 18 years of age, a citizen of United States of America, and a resident of the State of New York. At all times relevant, defenadnt Redner was employed by DOCCS as a correction officer at Mid-State Correctional Facility ("Mid-State").

7. Defendant Correction Officer Molly Annarino ("defenadnt Annarino") was, at all times mentioned herein, over 18 years of age, a citizen of United States of America, and a resident of the State of New York. At all times relevant, defenadnt Annarino was employed by DOCCS as a correction officer at Mid-State.

8. Defendant Corerction Officer Justin Walker ("defendant Walker") was, at all times mentioned herein, over 18 years of age, a citizen of United States of America, and a resident of the State of New York. At all times relevant, defendant Walker was employed by DOCCS as a correction officer at Mid-State.

9. Defendant Correction Sergeant Lucas Short ("defendant Short") was, at all times mentioned herein, over 18 years of age, a citizen of United States of America, and a resident of the State of New York. At all times relevant, defendant Short was employed

as a correction sergeant at Mid-State.

10. Each defendant named herein is being sued in their individual capacity.

## FACTUAL ALLEGATIONS

11. On May 16, 2021, plaintiff was an incarcerated individual at Mid-State confined either under punitive segregation in the Special Housing Unit ("SHU") or under punitive segregation in the Alternative to SHU Program, Step Down Program ("SDP").

12. On May 16, 2021, plaintiff was called for a visit as follows:
"Mallard...visit"
It was his birthday visit with his family after covid restrictions on visitation was lifted.

13. When an incarcerated individual is called for a visit, the incarcerated individual is escorted to the visit in a van by a correction officer or correction officers designated to escort incarcerated individual to their visit and provide security during the visit.

14. An incarcerated individual's PIMS level dictates whether they're required to remain in handcuffs with a waist chain and leg irons throughout the entire visit. PIMS levels 1-3 are used by security staff to determine an incarcerated individual's security level while under punitive segregation.

15. On May 16, 2021, defendant Walker drove plaintiff to building 101 from building 125 for his visit via transport van.

16. The ride was without incident, but when plaintiff had reached the rear entrance of building 101, and was in the process

of stepping out the transport van defendant Redner, who was waiting outside, came to the side of the van and got up under plaintiff's arm, and without provocation, picked plaintiff uo and slammed him on his face on the concrete outside the van.

17. Defendant Redner then began punching plaintiff all over the back of his neck and head. Defendant continued this moving wildly over the top of plaintiff, which resulted in him sustaining scrapes to his knees.

18. Defendant Redner tehn placed his elbow on the back of plaintiff's neck and caused plaintiff's face to screape against the concret pavement. Plaintiff was facing tow3ards the van and could see under the van that two sergeants and other three correction officers were running towards hsi direction. And because of the pressure of defendant Redner on plaintiff's back, it caused plaintiff to have difficulty breathing.

19. Believing that plaintiff was going to die, he began screaming for help. Defendant Walker, who was standing near the van while defenadnt Redner assaulted plaintiff yelled "the sergeant is coming!"

20. When the sergeant arrived, who was defendant Short, he kicked plaintiff in the ribs and bent down to place his hand over plaintiff's mouth and told him "nigger shut up. We'll kill your black ass over here. There's no cameras over here."

21. Afterwards, defendant Redner picked plaintiff up off the ground in such a manner that caused his sweater he was wearing to rip, and placed him back into the transport van. This is when plaintiff seen defendant Annarino watching around the area as a lookout.

22. With plaintiff in the van, defendants Walker and Short drove plaintiff to the facility clinic. When they reached the clinic, defendant Short pulled plaintiff into a room off to the side and began to say: "I'm going to tell you like a man..." but was cut off in mid-sentence by plaintiff who stated: "you called me a nigger." Defendant Short responded by stating: "yes, I did, and you're not going in there and saying anything on what just happened."

23. When plaintiff was seen by medical nurse Kehoe, who was the nurse at the clinic, plaintiff told her that he feared for his life and that defendant Short called him racist names and was going to kill him. Nurse Kehoe responded that plaintiff will be alright. Plaintiff then told nurse Kehoe, "look at me I am in waistchain and handcuffs and leg irons and if anything happens to me tell someone what occurred." Nurse Kehoe assurred plaintiff that she would.

24. Plaintiff's waistchain and leg irons were removed and he was stripped, frisked, and photographs were taken of his injuries.

25. Defendants Annarino and Redner both filed both filed use of force reports and TO/FROM statements that were falsified.

26. Defendant Annarino filed a false misbehavior report alleging, among other things, that plaintiff kicked her in the right knee.

27. As a result of the misbehavior report authored by defendant Annarino, plaintiff was subjected to a hearing on the matter, and defendant Barbosa presided over the hearing.

28.   At the hearing, defendant Barbosa denied plaintiff his due process right to call witnesses and present documentary evidence.

29.   Defendant Barbosa disregarded plaintiff's requests described in paragraph 28 above and found plaintiff guilty and, inter alia, sentenced him to 365 days in the SHU.

30.   Plaintiff filed a timely appeal and the Director of Special Housing/Disciplinary Program reversed the determination of guilt against him and ordered a new hearing.

31.   Plaintiff was transferred to Upstate Correctional Facility ("Upstate") and the rehearing was commenced and presided over by defendant S. Martin.

32.   At the rehearing, defendant Martin denied plaintiff his right to call witnesses and documentary evidence, as well as, audio and video footage of the incident.

33.   Prisoners' Legal Services filed a timely appeal on plaintiff's behalf and on November 10, 2021, the Director of Special Housing/Disciplinary Program reversed and expunged the determination and underlying misbehavior report from plaintiff's records.

34.   With respect to the use of excessive force by defendants Redner and Short and the failure to intervene and protect against defendants Walker and Annarino, plaintiff filed grievances and appealed.

35.   Plaintiff also filed a grievance concerning the due process violations of the rehearing and appealed.

36. It should be noted that plaintiff was already confined under punitive segregation for more than a year prior to the events complained of in paragraphs 10-35, and the period prior to and after the May 16, 2021 incident, was continuous and without interruption.

37. Also, it should be noted that plaintiff no more than 6 months prior made a complaint against both defendants Redner and Annarino, which, upon information and belief, accounted for the unreasonable and excessive force used against plaintiff on May 16, 2021, as well as, the issuance of the misbehavior report authored by defendant Annarino and endorsed by defendant Redner.

38. Lastly, throughout the entire period plaintiff was still at Mid-State, following the use of force incident occurring on May 16, 2021, he was not visited by certain members of his family, whom wanted to visit with him, but didn't out of fear that if they did so, plaintiff would be abused further.

## LEGAL CLAIMS

### FIRST CLAIM

39. Use of excessive force by defendants Short and Redner in violation of the Eighth Amendment of the United States Constitution.

### SECOND CLAIM

40. Failure to intervene and protect by defendants Walker and Annarino in violation of the Eighth Amendment of the United States Constitution.

### THIRD CLAIM

41.   Denial of due process at disciplinary hearing by defendants Barbosa and Martin in violation of the Fourteenth Amendment of the United States Constitution.

## FOURTH CLAIM

42.   Excessive force by defendant Redner in retaliation of plaintiff filing complaint against him in violation of the First Amendment of the United States Constitution.

## FIFTH CLAIM

43.   Failure to intervene and protect by defendant Annarino in retaliation of plaintiff filing complaint against her in violation of the First Amendment of the United States Constitution.

## SIXTH CLAIM

44.   Conspiracy in furtherance of covering up retaliation and excessive force by defendants Redner, Annarino, Walker, and Short (i.e., falsifying records, including but not limited to, Use of Force Report and Misbehavior Report), resulting in further injury to plaintiff, in violation of the First and Fourteenth Amendments of the United States Constitution.

## RELIEF REQUESTED

45.   WHEREFORE, plaintiff hereby respectfully prays for judgment in the sum of $50,000.00 (fifty thousand dollars) as compensatory damages, and the sum of $50,000.00 (fifty thousand dollars), as punitive damages, and the sum of $1.00 (one dollar), as nominal damages against each defendant named herein, jointly and severely; and

granting any other further relief this Honorable Court deems just and equitable and proper.

Dated: Dannemora, New York
       December 15, 2022

_Larry Mallard_
Larry Mallard, Jr.
Clinton Corr. Fac.
P.O. Box 2000
Dannemora, New York 12929